Your Honor, this is the third case of the morning, call 210-7, excuse me, 676, the Reserve at Woodstock, LLC v. City of Woodstock, et al. On behalf of the Avalon, Mrs. Jennifer Gibson, on behalf of the Avaline, Mr. James Griffin. Both sides ready to proceed? Yes. You may proceed. Thank you. May it please the Court. Clerk, Ma'am, and opposing counsel, I'd like to thank the Court for granting oral argument on this case today. There are several really interesting issues, but it appears that there is one main issue that all the other issues keep coming around full circle, and that's the issue regarding the interpretation of the party's annexation agreement, and specifically paragraph 14 of the agreement. Paragraph 14 is the paragraph that provides that if the property is not developed within five years of the annexation, that the city has the right to zone the property to agricultural, to disconnect it, or avoid any final approved flats. The Reserve's contention is that provision means that the city had those rights at or near the five-year anniversary of the annexation. The city maintains that the agreement says what it says, that if the property is not developed within the five years, that the city has or maintains those rights throughout the 20-year term of the agreement. When does that expire? The agreement was entered into in May 1993. The agreement would expire in May 2013. So if the city had allowed the flat to be approved, allowed the ten lots to be developed, and this had all occurred before May 2013, then, according to your argument, the city could have disconnected the property thereafter, correct? No. Why not? Because development had already occurred. The development that supposedly gave the city the right to disconnect was effectively breached five years after the agreement was signed. And your argument in your brief was the day after the five-year term expired, your client had the right to disconnect the property any time up to the last day of the agreement, which meant that regardless of what transpired, as you called it, a right, then if, in fact, this is a right that cannot be altered or affected or changed in any way, then this property could have been developed in any way, shape, or form that the parties agreed to. And on the last day of the agreement, the city could have disconnected the property, according to your argument. Now, you may want to alter your argument now during oral argument, but that's the argument that you made in the brief. I think that if the property had already been developed, we'd have a much different issue. We wouldn't be, obviously, arguing over whether the plaque should be approved or issued. The plaque would have already been approved. The structures would be built. We wouldn't be here disagreeing over the rezoning back to agricultural. Well, now you've said that if the thing was developed, then it would be different. Why wouldn't it be the same thing if it should have been developed? What's the difference between it being developed or it should have been developed, but it wasn't because of a lack of good faith and fair dealing on the part of the city? Now, the lack of good faith and fair dealing, and I'm glad that you brought that up, because every contract does have an implied duty to operate under good faith and fair dealing. But when you look at that implied covenant, number one, I've never seen it applied to actually alter or change terms of an agreement or insert terms that don't exist. And number two, generally, the cases that apply that apply it to an obligation or a duty. And here, what we have is the city is attempting to exercise a right given to them under the agreement. And I think that if you focus on the plain terms, there are several terms within that paragraph itself that lead or that favor the city's interpretation. And number one, the fact that there was no time limitation inserted in there, cautions against inserting an at one year, five year window. The drafters could have easily worded the contract to say that if development does not occur within five years of the annexation, that at that time, the city may de-annex, rezone, or avoid final plat within blank time limit. But I believe if there's a contract and the contract has time frames, unless there's a clause that says time is of the essence and doesn't set forth a set period of time, then isn't it usually determined to be a reasonable time for the occurrence to take place or the obligation to be fulfilled? And I think that's right. However, again, that applies to an obligation. And I don't think that's ever been applied to limit a right given to them under the agreement. Another term that I'd like to point out in that paragraph is the use of the word has. The city has the right. Now has, it's the present singular conjugation of have. Have means to maintain or hold. So that again favors that the city maintain this right. Another term in there is the inclusive conjunction and or. What would extinguish your right to disconnect the property? If development had already occurred within the first five years or let's say at year 12? Obviously, if development had occurred within the five years, I believe that our rights would extinguish. I would agree with that. Afterwards, I think that that's a whole different situation and that's a whole new argument. You have the issues of the homeowners. What I'm driving at is if you position is that throughout the 20 years up until May of 2013, another two years from now, whatever, 20 months, whatever, if you could disconnect the property up until that point, is there any time or any event prior to that date that would extinguish your right to disconnect the property short of completed, finished development? And then maybe you have a waiver argument. You have a clear, unequivocal, decisive act by the city in approving this development, approving the plan and letting it go forward. But here, where's the waiver? The city, at the most, had a delay or an inaction. Another action of the city was to actually process the preliminary plat. But if you look at that action, the city had to process the plat. I think it's Division 12 of the Illinois Municipal Code, 11-12-8, requires both the plan commission and the city to actually process the plat once it's submitted. That act could not have constituted a waiver. Because it's an obligation? Correct. It complies with the law. The city is complying with its ordinance. The city is complying with state statute. So we don't have a waiver there. Did they actually file a plat as part of the annexation agreement consisting of the 10 acres and 20 lots? I believe that the original purchaser, or the original owners of the property, Oak Park Bank, may have. May have filed one. And what would constitute development? Development would be the plats have been approved, the permits have been issued, and development... Development would not mean a completed 20 houses within 5 years, I take it? Correct. I mean, with development... If you came in and started working on one particular lot within the 5 years, then you would have 20 years to finish off the rest of the 20 lots. Is that the position you're taking? Well, I would say development was occurring. Definitely development hadn't occurred, it hadn't been completed, but it's definitely occurring. What would it take, what action would the city deem to be sufficient to extinguish its right to disconnect? I don't mean to appear to be splitting hairs with you, but is it the first bulldozer that scoops up a chunk of dirt to start a foundation on the first house? Is it the sewer lines are in, the streets are in, what's in it? I think that if development had at least been approved by the city, if development had been approved, the final plats better approved, then it's at least started. It's started. At least started. Your brief talks about Coro Ronto as being the only format upon which relief concerning a disconnection or a connection could be had. Is that correct? According to the Montgomery case, I believe that challenges to disconnection have to be brought via Coro Ronto. That was, Your Honor, second district decision in Montgomery. It didn't leave any exceptions, and in combing the case law, the case law really didn't carve out any exceptions either. There was one case, the Elm Ronde case, that seemed on its face to depart from that and allow a declaratory judgment, but if you look at that case closely, I really don't like the term red herring, but it almost seems like a red herring because in that case, if you read it under Headnote 2 or 3, I think, it explains that what they were deciding there was a pre-annexation agreement. They weren't actually litigating an annexation agreement. It was a pre-annexation agreement. So I think it's correct to say that you believe that Coro Ronto is the appropriate format, correct? Correct. But then you say in your brief that the disconnection is based upon the agreement entered into between Oak Park Bank and the city. That's correct. We believe that the city… with the enforcement of a contract or any breaches thereof. In other words, it seems to me that most Coro Rontos relate to things that are not based upon a contract where consideration is given between various parties. Coro Rontos are usually based upon some municipal corporate action that is in compliance with statutory procedure where notice is given and hearings are held and so on and so forth. There are petitions filed by various people. They aren't involved in enforcing a contract or interpreting the terms of the contract. So why do you think if supposedly the right to disconnect is based upon a contract, why do you think a Coro Ronto which relates to an administrative or a quasi-judicial review of a disconnection pursuant to a statute as opposed to a contract? The closest case I found, and this case was not cited in the brief, but I'll give your honors the cite, was Ryan v. City of West Chicago, 216 L.F. 3rd, 683. In that case, what was being challenged is an annexation agreement with the city involving DuPage Airport. And specifically, the challenges of the annexation agreement were arguing about the terms of that annexation agreement, specifically terms that delegated police powers. And in that case, I believe that they really didn't get into the terms of the annexation agreement. Was that James Ryan, the state's attorney you're talking about, or George Ryan, the Secretary of State? James. Did that case involve Mr. Ryan's entry into a contract with West Chicago? An annexation agreement. No. Yes, it did. There was a contract and an annexation agreement. Between the county of DuPage or between Ryan and West Chicago? Between the DuPage county, between the county. Between DuPage County and the state of West Chicago. Correct, concerning the airport.  Almost explaining that although they were challenging the terms of the agreement itself, it wasn't just about the terms of the agreement, it was about the annexation itself. And here, I believe it's, the main question is the validity of the disconnection itself. I have a question. Do you believe that Estoppel is one of the issues raised in the briefs? I do not. By Estoppel, I mean the fact that the petitioner filed for a permit to build on the 20 lot original plat. That the petition was processed through the plan commission and any other municipal bodies and was approved up until the time it got to the village board. During that process, the petitioner was called upon to spend a minimum of approximately $50,000 or $60,000. Was that part of the argument at the child court level? I believe it was a part of the argument, and even in fact, it was either count one, two, or three, which was dismissed and decided in our favor. It was based on Estoppel. Counts one, two, and three were still, the trial court had not made a final ruling up to a point in time. And if we affirm, by affirming the trial court, counts one, two, and three would still be a part of the issues in the case, right? In other words, count one, two, and three was sort of set aside and delayed while other issues were argued and other amended complaints filed. The amended complaints incorporated counts one, two, and three, but the court never ruled upon counts one, two, or three. But they were still an issue in the fourth amended complaint. Is that your understanding? Sort of. My issue is that they were dismissed because the trial court gave the verdicts it did on counts four, five, and six. However, if as a matter of law, the annexation agreement is interpreted as the city interprets it, I believe that necessarily that would resolve counts one, two, and three along with four, five, and six. In fact, the trial court found that the petitioner could develop the lots under the plat in accordance with the building ordinance or building code existing at the time of the annexation agreement. And I believe also existing at the time that the petitioner filed for a permit to build. That seems to be what the trial court did find, yes. And then the trial court eventually based its finding on what was fair and equitable under the circumstances and, in effect, found that the petitioner could build under the initial ordinance, not the new ordinance. That is correct. The trial court, and we believe that's one of the errors made, did apply the old subdivision ordinance, the SPO, rather than the new one, the UDO. Reason being is we don't think that the standard for the vested rights was met. There's a two-part test for vested rights, one being substantial expenditures incurred based on the probability that your development is going to be approved under the existing law. And I think that the best holding as to what that means is in the Lakeshore Associates case, the Supreme Court case from 2006. And how that court defines when the probability starts is it starts its analysis at the time of the first action where the change in the law becomes probable. And here the city believes that under two circumstances it could become probable. Number one, at the five-year mark when development didn't occur, it was probable, or at least possible, that the city is going to rezone the property, disconnect it. Number two, in 2004, when the plan commission discussed in its meeting denying the plan based on the agreement and recommended that it be rezoned and disconnected. So I think at a minimum we have two events that would constitute the standard under the Lakeshore Associates. Just one minor. This agreement was entered into in 83, is that correct? 93. 93, and 2004 is when they submitted a proposed plan. 2005. 2005. So in 93, five years is 98. So in 1998 would have been the five-year time for the village to fish or cut base relative to disconnection according to the judge. Is that not correct? According to the judge, correct. And during the first five years the city was collecting real estate taxes, was it not? It was. And it was collecting real estate taxes up until when? When it disconnected the property in 2007 or 2008 or something like that? That, I don't know how long they collected it. And I guess I'm even presuming that they collected it. I don't know for sure. That actually appears to be something not in the record. Okay. Thank you. Thank you. Thank you. Do you wish to proceed? Yes. Thank you. May I please the Court and Counsel? I'm going to start my remarks on what I think is actually the most critical issue in the case, and that affects landowners throughout Illinois, and that is the issue of property rights and the extent to which they exist in the state. I want to quote from a case we did cite, People x Rel. Tilden v. Massillon. This is at page 316. It states, That was 1917. That's still true today. If property owners and prospective property owners know what rights and restrictions exist concerning the use of that property, and if a property owner seeks to exercise a right that exists, can local government unlawfully deny that right and then subsequently change their ordinance to eliminate that right? That, to me, is a critical issue in this case, because if that's allowed, there are really no property rights, because government can continuously change its ordinances, change its rules and regulations, and deny property owners the right to use their property. Cities and municipalities can change their ordinances all the time. They can change single family to multi, change it to agricultural. If they want to disconnect a piece of property, they can attempt to disconnect a piece of property. They can annex property. Making all type of changes that affect ownership rights of property owners. That's correct, Your Honor. But in this case, the city denied a plaque that it was legally obligated to approve. It conformed to all the requirements of the city's zoning and subdivision code. Then, as a defense to that action, it relied on the fact that it had later changed its ordinances. I think that is a materially different situation than the right of the municipality to make changes in the laws, as you've stated, Your Honor. Well, let me ask you this. Say, five years without anything happening with respect to development of the property, the village passes an ordinance to disconnect. Did they have that right under the annexation agreement? They did. All right. Do you agree that it was only after a petition to develop the property was filed and processed and denied that the annexation agreement, in particular paragraph 9 and 14, came into play, which limited the right of the municipality to disconnect? Well, I mean, the interaction and the contract interpretation to harmonize paragraph 9 and 14 were a substantial issue in the case. In paragraph 9, it says, As no change or modification of any ordinance, code, or regulations shall be applied during the term of this agreement so as to affect the zoning classification or uses permitted thereunder of the subject property. So from a contract interpretation standpoint where we argued the city's interpretation was an error and the trial court agreed was, In 2006, the year that this plot was denied, under the city's interpretation, the city had the absolute right to rezone the property at any time. But you also have paragraph 9, which says, During the term of the agreement, they cannot rezone the property. You need to harmonize those two. And the way you harmonize those two is the way the trial court did it, to say that at the five-year period, that was the time for the city to take action if it wished to rezone or disconnect the property. And the city didn't do that. And further, the city acted in contradiction of intending to take that action. The city reviewed various proposals for the development of the property. The city accepted a preliminary I don't think anything in that agreement anywhere that says that if the city fails to exercise its rights under paragraph 14, that they are lost. I mean, you're basically making a waiver argument. Well, we made a both a contract, a pure contract interpretation argument, which wasn't dependent on any facts, and a waiver argument. The trial court's opinion or order indicated that certainly she believed it had been waived by the conduct of the city, accepting plat fees, reviewing the plat, in fact, asking for additional information for the subdivision. But we argued both that. And it's because you have to read the two provisions in harmony. I agree. Paragraph 14 doesn't stay in harmony. Pardon me? Harmony, in my mind, relates to music, whereas parametery is a specific legal term that relates to trying to read them in a coherent, reasonable manner so that both are given sufficient and roughly equal perkins. I agree with that. And so you cannot read paragraph 14 in a vacuum. You have to look at paragraph 9. And in paragraph 9 also specifically says that it is effective during the term of this agreement. That's 20 years. That type of specificity does not exist in paragraph 14. But it does in paragraph 9. Can you take this position? Paragraph 9 would apply if the property, somebody started to develop the property during that five-year period. And it could continue with respect to any changes in existing codes, et cetera, as the property is developed. I take the position that if you have 20 lots, it's going to take you a minimum of a number of years to get everything developed. Even if you had one developer who decided to build 20 houses, the spec houses, it will take him at least a couple of years to get all those 20 houses built at a minimum. So my issue is, did you also argue estoppel as part of your argument and include estoppel as part of your waiver argument? In other words, you used the words vested rights, that you, the builder, had some vested rights in that property at a point in time. And I take the use of vested rights as the money spent in pursuing the plat for employment. We did, Your Honor. I don't know if the term estoppel was there, but certainly vested rights is based on the estoppel theory. That's the underlying equitable basis for it. So we did. We asked the trial court to approve the permanent plat on two grounds. One, we said, regardless of the city's change in the ordinance, at the time the city made its determination, the plat met all the requirements. The city should have approved the plat, and subsequent changes to the ordinance should not be applicable. And that's based on a few subdivision cases that we've cited in our brief. As a secondary argument, and this is the argument upon which the judge granted judgment, was that we had, again, divested interest by the expenditures that were made, which were substantial, over $50,000. The testimony was that was the majority of the cost for creating the final plat of subdivision. And I want to point out, this is not a building permit case. 20 houses were going to be built out there, but we were not in for 20 building permits. We were in to get a piece of paper to take to the recorder's office to have this land subdivided. So the majority of the costs incurred in that process were expended. So I do think that we met the test, to the extent there is a test for vested rights. I think if you look at 1350 Lakeshore Drive, certainly the court says, well, this is a factor, that's a factor. But it's the totality of the circumstances in an equitable remedy. And that certainly leaves the trial court in the best position to make a determination as to vested rights. What was the total value of the property? I don't know that there was testimony as to the total, the current value of the property in 2006. And I don't recall what the property was purchased for. What's the assessed value of the property by the town assessor? I don't know. Mr. Loftus is here. I could ask him if he wanted to do that. I'm sorry. Was that considered in determining whether or not $50,000 constituted a vested right? The amount of taxes? Wouldn't you put it into context? You brought up the example of a property on Lakeshore Drive. Maybe $50,000 expended for lakefront property might not have the same consequences as property near Woodstock. So my question to you is, what was the $50,000 compared to? It's not in the record. It was compared to the total cost in order to obtain and to create and record a final plan of subdivision. And what was that total cost? The testimony was that the $50,000 was the majority of the cost to do that. There was a specific dollar figure put to it. That was just in somebody's opinion? That was the only witnesses that testified on that opinion, yes. And there was also testimony as to the cost to build out the improvements, the roads, and the other public improvements, not the homes. I believe that was $440,000. So we believe that even if that is the figure that it should be compared with, which we don't believe that that's the most appropriate figure, that's still a substantial amount. Was your plan of subdivision identical to the original plan of subdivision that was filed along with the annexation agreement? There wasn't a plan of subdivision that was filed. There was a 20-lot descriptive claim. It wouldn't have met the technical requirements for a plan of subdivision having the necessary. Rough draft or at least an architect, a survey, a land survey of where the lot lines would be and where the roads might go. Correct. And within the record, there is a letter from the village's development director, Mr. Kastner, that says the annexation, I think originally it was a 26-lot subdivision that was proposed. I don't know if it was formally filed, and that's in the record. And Mr. Kastner writes a letter to the reserve saying the annexation agreement allows a 20-lot subdivision, not a 26-lot subdivision. And that's the basis for that. Just out of curiosity, your plan, what was the median square footage of each lot? Well, it was a 10-acre property, so I think it was a minimum, I believe it was a minimum of 12,000 in the R1 zoning district, R1B. I do believe that's in the record, the minimum zoning. I don't have that in front of me. You didn't answer my question. You told me what the requirements were. You didn't tell me what the lots were. In other words, the requirement was 12,000. Was your lots 12,000, or were they 13,000 or 15,000? I believe some of the lots were in the vicinity of the minimum. If it was 12,000, others were larger based on the layout. Any flag lots? No. What was the purpose behind the water survey? Was it called a hydrology report? There is a pond that's owned by, I think, a group, a preservation group that is located near the property. So I believe the city wanted some confirmation that the development of the subdivision would not affect this pond and the water within the pond. Is there water retention areas in your proposed plan? Yes, per the city's requirements at the time. What is the water level elevation by comparison to this pond that you referred to? I can't answer that question now. I believe I've addressed all the major issues I wanted to cover, unless the court has anything further. Thank you. Thank you very much. Did you lose your reply? I did. Thank you. The first thing that I guess I want to clarify is Judge McIntyre's decision in the trial court, seemed to decide in favor of the reserve based on waiver. Somehow, this at or near window at the five-year period developed on appeal primarily, I think. But Judge McIntyre's ruling appeared to be based on waiver, which the city contends just didn't occur here. The unequivocal acts just weren't present here. Number two, counsel seemed to point out that the preliminary plan complied with the ordinance at that time, and we were required to approve it. The Illinois Municipal Code, Section 1112.8, is wording really very carefully to require approvals of final plans. Specifically, it says that final plans of subdivision or resubdivision for final approval, when they meet everything, have to be approved. But glaringly omitted is anything about preliminary plans, possibly presumably because they're in the preliminary stage. So I'm not sure if that's entirely accurate, that the city had to approve the preliminary plan. It wasn't certainly required by Section 1112.8. Counsel also brought up reading the various sections of the agreement in harmony with each other. And I think that there's one way to do that. You look at Paragraph 14, Paragraph 9, and Paragraph 5. And Paragraph 14 seems to be specifically on point as to what may occur or what rights the city has if a certain condition doesn't occur, and that's development of the property. Paragraph 9 and 5 are general provisions that are subordinate to the specific Paragraph 14. Paragraph 9, for instance, there's two parts to it. The first says that there can't be any change or modification of any ordinance or code that relates to zoning. And that's the part that presumably conflicts with 14. But again, that that's a general paragraph that is subordinate to the specific instruction in 14, that if this occurs, we can rezone the property. The second half of Paragraph 9 contemplates changes in the city's ordinance or codes. And it says, and it poses an obligation on the developer that they should comply with all ordinance and requirements at the time of either annexation or the issuance of building permits, whichever is later. Well, building permits haven't been issued yet. That's an app for later in the future. Per that paragraph, the parties specifically contemplated that these procedural ordinances, the SPO, would change. Paragraph 5 also really isn't in conflict with Paragraph 14. It says that except as modified by this agreement, I think that's further evidence that 5 is subordinate to 14. The development of the property shall be in accordance with existing standards as they exist now or here and after shall be amended. So again, the parties are contemplating that these procedural ordinances may be amended. Ms. Gibson, I just want to clarify something. I don't believe I remember reading anything about a claim that there were material issues of fact and that this should be remanded for a full-blown trial. Is that correct? No, I do not believe that the parties believe that there are material issues of fact here. The facts are basically uncontroverted as to the dates and things that were submitted and the actions taken as far as refusal and so on and so forth. Correct. And we believe that these issues can be decided as a matter of law. The final thing I want to bring up is the prong of the substantial expenditures on the vested rights issue. And it's the city's position that the reserve simply didn't meet its burden. The Lakeshore Associates case, the 2010 First District appellate case cited in our brief, sets out three specific elements. It doesn't limit the court to considering other elements, but it sets out three specific elements. Number one is the purchase price of the property. Nowhere does that remain in the record or was it introduced at trial. Number two is a comparison of the expenditures that the developer has spent in relation to the total cost of the development. We believe that they didn't even introduce evidence as to the total cost of the development. We just know the cost to subdivide the property, not even to build the houses. And number three is the third element is the character of the developer itself, whether this is an individual or a company for profit. And I think obviously that that factor favors the city. The reserve is an LLC. He's a developer developing 20 lots for profit here. My question is, after the five-year period, what rights, if any, did the owner of the property have with respect to use of that property under the annexation agreement? Well, the owner would have whatever rights the previous owner had. I think whoever owns it is immaterial from the standpoint of the briefs and the argument. But what right did the owner have after that five-year period passed with respect to that property? Well, certainly he had the right to ask the city for permission to develop, to submit his plans, and to see if the city believed that it fit within their comprehensive plan. And it did that? It did that. And it's not the only right you could think of. Assume it had a right to file a petition to disconnect, file a petition to rezone. But whatever rights it had, it had the same rights as any normal landowner. It would have the same rights as any normal landowner within the city until the city did exercise its rights to disconnect and rezone and such. And you agree that if the owner established vested rights, then that would prevent the city from rezoning or disconnecting their property? No, not necessarily. I think the vested rights really applies to the plat. But here, I don't know that the vested rights really is applicable to the rezoning of the property or the disconnection. And if the property was lawfully disconnected pursuant to the agreement, I think that the issues with the plat possibly could even be a non-issue or removed because the property doesn't remain in the city. So the city would have no obligation to approve a preliminary plat, a final plat. In private practice, I represented somebody that lived within a mile or so of the city of West Chicago. And they had to go and get their plat approved by the city of West Chicago, even though they were located in the county. So I believe that if they're within one mile of the city limits, unless the laws change, they would still have to take their plat and have it approved for purposes of determining whether or not the curbs and the streets and so on, street lights and so on and so forth was affected. That's based upon my past experience as a private lawyer. When you're in unincorporated territory, you have to deal with the county and you have to deal with any municipalities that you are within their territories. And I assume that if this property was disconnected, it wasn't annexed by a municipal corporation. It went back into the county. Is that correct? Is that what you're claiming would have happened? We're claiming that the property was DNX. It's a county. Thank you very much. Thank you. Thank you.